# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARMEN MUHAMMAD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 18 C 04192 |
| ) | |
| DOLLAR TREE and FRANK PIERUCCI ) | Judge Jorge L. Alonso |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carmen Muhammad filed this *pro se* action against Defendants Dollar Tree[1] and Frank Pierucci, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and of 42 U.S.C. § 1981. Defendants now move to compel arbitration pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendants' motion is denied [53].

## BACKGROUND

From November 1, 2016 through approximately November 2017, Plaintiff Carmen Muhammad worked for Defendant Dollar Tree as a manager of one of its stores in Chicago. During that time, MuhammI ad's immediate supervisor was Defendant Frank Pierucci, a district manager for Dollar Tree. (*See generally* Pltf.'s Am. Compl., ECF No. 46.) Muhammad, who is an African-American woman, was fired by Defendants in November 2017. Muhammad then filed this suit *pro se*, alleging that Defendants wrongfully terminated her employment, that Defendants discriminated against her because of her sex, color, and race, and that Defendants retaliated against her after she complained of the discrimination she endured. (*Id.*)

---

[1] In its motion to dismiss, Dollar Tree states that it has been incorrectly named in this suit and that its correct legal name is Dollar Tree Stores, Inc.

Defendants contend Muhammad's suit should be dismissed because she agreed to arbitrate her claims. Defendants claim Muhammad executed a "Mutual Agreement to Arbitrate Claims" ("the Arbitration Agreement"), which states in relevant part:

> Claims subject to arbitration include, but are not limited to, claims for: overtime, misclassification as to exempt status, breaks, meal periods, expense reimbursement, pay for bank runs, off the clock work, wages, or other compensation; work conditions, including seating; breach of contract or covenant (express or implied); torts (including without limitation defamation either during or after employment with the Company); ***wrongful termination; retaliation or discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition)***; benefits (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance); intellectual property, confidential information, or trade secrets; ***or violation of any federal, state, local, or other governmental law, statute, rule, regulation, or ordinance*** ….

(Defs.' Memo. in Support of Mot. to Dismiss, ECF No. 54, Ex. A at Ex. 3) (emphasis added).

According to Defendants, Muhammad reviewed and signed the Arbitration Agreement during Dollar Tree's onboarding process. Defendants submit a sworn affidavit from Dollar Tree "Talent Acquisition Operations" manager Vincent Votta, which describes this onboarding process. (ECF No. 53 at Ex. A.) Votta states that, in November 2016, Dollar Tree used a secure web platform known as "Career Launch" for its onboarding process. (*Id*. at ¶ 5.) When Dollar Tree hired an employee, the new hire was required to create a unique password to access Career Launch. (*Id*. at ¶ 6.) Part of the onboarding process was reviewing and electronically signing certain documents, including the Arbitration Agreement. (*Id*. at ¶¶ 5-7.) More specifically, a new hire had to review a webpage on the Career Launch platform that summarized the purpose of the Arbitration Agreement, click a link to review "Frequently Asked Questions" relating to the Arbitration Agreement, and click a link to review the Arbitration Agreement itself. (*Id*. at ¶¶ 8-11.) Then, the new hire had to click a statement affirming that he or she received and read the Arbitration

Agreement. (*Id*.; *see also id*., Ex. A at Ex. 1.) Additionally, after completing this initial review, a new hire was then required to sign into Career Launch a second time and electronically sign the Arbitration Agreement, which is done by entering the new hire's unique password. (*Id*., Ex. A at ¶¶ 12-14.) Defendants attach a copy of the Arbitration Agreement which includes Muhammad's electronic signature, dated November 1, 2016. (*Id*., Ex. 1 at Ex. 3.)

In response, Muhammad states she never received nor executed the Arbitration Agreement and further contends that the Arbitration Agreement was fabricated by Defendants. (*See* Memo. in Support Pltf.'s Resp., ECF No. 67 at 5-6.) Muhammad submits her own declaration and certain emails she received from Dollar Tree at the time of her hire. According to Muhammad's declaration, she received emails from Defendants on October 17, 2016 and October 31, 2016 regarding the onboarding process. (*See* Decl. of Pltf., ECF No. 68 at ¶ 2.) Muhammad states these emails did not contain any link or attachment containing the Arbitration Agreement, and Muhammad further states that she did not sign the Arbitration Agreement on November 1, 2016 nor at any other time during her employment. (*Id*. at ¶¶ 3-5.) Muhammad includes three emails from Dollar Tree with her affidavit. The first email, dated October 17, 2016, offers Muhammad a position as a "manager trainee." The email includes a link to the Career Launch platform and explains that Muhammad must create a unique password for Career Launch. The email also includes a reminder that Muhammad will need her Career Launch password "to complete documents required on your first day of work." (*Id*., Ex. 1 at 7.) The second email, also dated October 17, 2016, contains information and attachments about Dollar Tree's dress code policy and employee benefits. (*Id*. at 2-4, 8.) The third email, dated October 31, 2016, reminds Muhammad to bring her Career Launch login credentials on her first day of work and includes an unsigned copy of Dollar Tree's "Information Systems Usage and Security Policy." (*Id.* at 5-6.)

In reply, Defendants offer another affidavit from Votta, which further discusses Dollar Tree's onboarding process and records kept in the regular course of business. Votta states that Dollar Tree keeps onboard data that reflects whether new hires complete the initial review of documents through Career Launch discussed above and attaches business records purportedly showing that Muhammad completed the initial review of hiring documents prior to her first day. (*See* Defs.' Reply, ECF No. 73, Ex. A at ¶ 3 and Ex. 2.) Votta also includes thirteen (13) new hire documents that were electronically signed and dated November 1, 2016 by Muhammad. (*Id*., Ex. A at Ex. 3.) Further, Votta states that the final step of the onboarding process for Muhammad was electronically signing an I-9 form and that, due to how Career Launch operates, she could not have completed her I-9 form without first electronically signing the Arbitration Agreement. (*Id*. at ¶ 6.)

Defendants also offer the sworn affidavit of Ashley Heery, a District Manager for Dollar Tree who trained Muhammad. (*Id*., Ex. B at ¶¶ 1-3.) Heery states that she trained Muhammad on November 1, 2016, that part of that training was overseeing Muhammad's completion of the onboarding process, and that Heery electronically signed Muhammad's I-9 form as the final step of the onboarding process. (*Id*. at ¶¶ 4-5.) Due to how Career Launch operates, Heery could not have signed Muhammad's I-9 form until Muhammad had electronically signed all her onboarding documents, including the Arbitration Agreement. (*Id*.) Heery states she has never electronically signed documents for another employee, and did not sign Muhammad's forms. (*Id*. at ¶ 6.)

Muhammad filed her complaint on June 15, 2018. (*See* Compl., ECF No. 1.) Thereafter, Defendants simultaneously filed their answer to Muhammad's Complaint as well as a motion to dismiss, as required by the Northern District of Illinois' Mandatory Initial Discovery Pilot program. (*See* Defs.' Answer, ECF No. 19; *see also* Mot. to Dismiss, ECF No. 20.) In their answer, Defendants asserted the arbitration agreement as an affirmative defense. (ECF No. 19 at ¶ 17.)

However, in their initial motion to dismiss, Defendants argued only that Muhammad failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and did not argue that Muhammad's claims should be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

Before the Court ruled on Defendants' initial motion to dismiss, Muhammad moved to amend her complaint. (*See* Mot. to Amd. Compl., ECF No. 40.) The Court granted leave for Muhammad to amend her complaint, which she did. (*See* ECF No. 46.) Thereafter, Defendants filed their current motion to compel arbitration or, in the alternative, to dismiss. As alluded to above, the parties have fully briefed the instant motion. All discovery in this case has been stayed pending the outcome of Defendants' motion. (*See* ECF Nos. 58 and 83.)

## **LEGAL STANDARD**

Motions to compel arbitration concern venue and are properly addressed under Federal Rule of Civil Procedure 12(b)(3). *Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (citing *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014)); *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) (an arbitration clause is "simply a type of forum-selection clause," and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3)). The Court may consider materials outside the pleadings when evaluating such a motion. *Johnson*, 556 F. App'x at 544-45.

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration clauses in state and federal courts. *Jain v. de Méré*, 51 F.3d 686, 688 (7th Cir. 1995). Under the FAA, an arbitration agreement in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Court must grant a motion to compel arbitration under the FAA where the parties have a written arbitration agreement and the asserted

claims are within its scope. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). In deciding a motion to compel arbitration, the court's duty is to determine whether the parties' dispute belongs in arbitration, not to rule on the potential merits of the underlying claim. *AT&T Techs., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).

If a court "determines that the making of the arbitration agreement is seriously disputed, 'the court shall proceed summarily to the trial thereof.'" *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (quoting 9 U.S.C. § 4). "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Id.* Although the "the FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet," the Seventh Circuit has "analogized the standard to that required of a party opposing summary judgment under Rule 56(e)." *Id*.

## DISCUSSION

Defendants argue that all of Muhammad's claims are covered by the Arbitration Agreement and, as such, move the Court to dismiss this action and compel arbitration. In response, Muhammad makes two arguments. First, Muhammad argues the parties never entered into an Arbitration Agreement because she never reviewed nor signed it. Second, Muhammad argues that, even if the Arbitration Agreement is valid, Defendants waived their right to arbitration.

### I. The Arbitration Agreement

A party seeking to compel arbitration must show: (1) the existence of a valid written arbitration agreement; (2) the dispute in question falls within the scope of that agreement; and (3) the plaintiff refuses to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577 581 (7th Cir. 2006). Here, it is undisputed that Muhammad's claims are covered by the Arbitration

Agreement and that Muhammad refuses to arbitrate.[2] However, the parties disagree whether a valid arbitration agreement existed.

Whether an enforceable arbitration agreement was formed is determined by applying state contract law.[3] *Tinder*, 305 F.3d at 733. Defendants offer a signed copy of the Arbitration Agreement, and under Illinois law, it is clear that a written arbitration agreement like the kind at issue here can be valid and enforceable. *See Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151-52, 847 N.E.2d 99, 109 (2006); *see also* 710 ILCS 5/1 ("A written agreement to submit any existing controversy to arbitration…is valid, enforceable and irrevocable….") The Arbitration Agreement states the parties' mutual promises to arbitrate, as well as Dollar Tree's offer of employment, act as consideration. This is sufficient under Illinois law. *See Fuqua v. SVOX AG*, 2014 IL App (1st) 131429, ¶ 37, 13 N.E.3d 68, 80. The Arbitration Agreement also contains Muhammad's electronic signature, dated November 1, 2016. *See* 5 ILCS 175/5-120(a) (authorizing use of electronic signatures). In further support that Muhammad executed the Arbitration Agreement, Defendants offer two sworn affidavits explaining how the Career Launch platform works and how Muhammad was required to review and electronically sign various hiring documents, including the Arbitration Agreement, using her unique password. *See* 5 ILCS 175/5-120(b) ("[a]n electronic signature may be proved in any manner, including by showing that a procedure existed by which a party must of

---

[2] Muhammad's response does include a heading stating "Plaintiff's Amended Complaint does not fall within the scope of an Arbitration Agreement," but this section only conclusively repeats that the Arbitration Agreement is fabricated and that Defendants have waived their right to arbitrate. (ECF No. 67 at 6.) As such, Muhammad does not actually argue that her claims fall outside the Arbitration Agreement.

[3] Although the Arbitration Agreement does not contain a choice of law provision, the Court looks to Illinois law "[b]ecause all the relevant events occurred in [Illinois]." *Tinder*, 305 F.3d at 733; *see also Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (applying Wisconsin law to issue of arbitration agreement because it was "the state where the employment and termination took place"). Further, Defendants assert that Illinois law applies, and Muhammad does not contest this assertion. (*See* ECF No. 54 at 5-6.)

necessity have executed a symbol or security procedure…."). Thus, if uncontroverted, Defendants' evidence is sufficient to prove Muhammad entered into the Arbitration Agreement.

In response to Defendants' evidence, Muhammad submits her own declaration which repeatedly states that she never executed the Arbitration Agreement. (ECF No. 68 at ¶ 4-5.) Muhammad states that she never "received any link to electronically fill out any paperwork on purported 'Mutual Arbitration Agreement' in career launch on November 1, 2016 or any time during Plaintiff's career at Dollar Tree Inc." (ECF No. 68 at ¶ 3.) As detailed above, she also includes three emails she received from Dollar Tree prior to her first day of work. All emails reference the Career Launch platform, and one email contains directions and a link to access Career Launch. However, none of the emails attach or specifically mention the Arbitration Agreement.

Muhammad argues her declaration warrants denial of Defendants' motion to compel. The Court disagrees. But under the FAA, Muhammad may be entitled to a trial on the existence of the Arbitration Agreement. 9 U.S.C § 4. The question is whether Muhammad has "identif[ied] a triable issue of fact concerning the existence of the agreement." *Tinder*, 305 F.3d at 735. Again, the evidentiary standard for Muhammad is similar to a party opposing summary judgment, and as such, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [her] favor." *Id.*

Defendants argue that Muhammad's "unsupported denial of the existence of the Arbitration Agreement is insufficient to avoid compelled arbitration as a matter of law." (ECF No. 73 at 9.) But the cases Defendants cite in support do not stand for that precise proposition. Instead, the cases Defendants cite say that where a plaintiff testifies he or she does not *remember* receiving or executing an arbitration agreement, that is insufficient to create a genuine dispute of fact. *See Tinder*, 305 F.3d at 735-36; *see also Nitka v. ERJ Dining IV, LLC*, No. 18-cv-3279, 2018 WL

5884531, at *2 (N.D. Ill. Nov. 8, 2018). Unlike the plaintiff in *Tinder* and *Nitka*, Muhammad unequivocally denies ever receiving or signing the Arbitration Agreement, and this is enough to create a triable issue of fact. *See e.g., Gupta v. Morgan Stanley Smith Barney, LLC*, No. 17 C 8375, 2018 WL 2130434, at *2 (N.D. Ill. May 9, 2018); *see also Warren v. Meijer*, No. 16 C 4706, 2017 WL 3087724, at *3 (N.D. Ill. July 20, 2017) (denying motion to compel arbitration where plaintiff submitted affidavit "specifically den[ying] that he clicked to accept the [arbitration] agreement" even where defendant submitted testimony that plaintiff was seen accepting the agreement and records reflecting that plaintiff reviewed and accepted agreement).

*Gupta* is particularly instructive here. In *Gupta*, the defendant moved to enforce an arbitration agreement as to claims brought by a former employee. *Id.* at *1. Defendants argued the arbitration agreement was emailed to all its employees, including plaintiff, and stated that employees would be deemed to have accepted the terms of the agreement unless they affirmatively opted out by completing a form. *Id.* Plaintiff did not opt out and later argued he never received the email. *Id.* at *1-3. The district court interpreted cases in the Seventh Circuit "to impose a straightforward rule: when the plaintiff submits an affidavit stating that he does not recall receiving a letter, there is no triable factual dispute, but when the plaintiff submits an affidavit in which he denies receiving a letter, a triable dispute exists" *Id.* at *2 (analyzing cases). Adapting this rule to the present case, the Court finds Muhammad's declaration creates a genuine issue as to whether parties actually entered into the Arbitration Agreement. As such, a trial on this issue is appropriate.[4]

---

[4] Defendants also argue that, under the Arbitration Agreement, Muhammad continuing to work at Dollar Tree after completing the onboarding process constitutes acceptance of the agreement. (ECF No. 73 at 5.) This argument fails, because it assumes Muhammad reviewed but did not sign the Arbitration Agreement. Muhammad states she never received the Arbitration Agreement. *Meijer*, 2017 WL 3087724, at *4.

## II. Waiver of Right to Arbitrate

Muhammad also appears to argue that Defendants' motion to compel arbitration is untimely, and thus, Defendants have waived their right to arbitrate. (ECF No. 67 at 1, 3-4, 6.) In essence, Muhammad states that "Defendants waited 20 months" before moving to compel arbitration. (*Id.* at 6.) The Court has some trouble discerning how Muhammad comes up with this 20-month figure. She filed this suit on June 15, 2018, and Defendants filed the instant motion on June 14, 2019. (*See* ECF No. 1; *see also* ECF No. 53.) In her response, Muhammad points to an undated "grievance letter" she claims was sent to Defendants on December 15, 2017, which might be around where she starts her clock. (*See* ECF No. 67 at 2; *see also* ECF No. 1 at 10-13.)[5] That letter does not demand arbitration but does state "[i]f I were allowed the opportunity to receive a fair mediation and be offered my job back, I would like to suggest that I be placed under Ashley [instead of Defendant Pierucci]." (ECF No. 1 at 13.)

"Like any other contractual right, the right to arbitrate can be waived." *Smith v. GC Services Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018). Muhammad cites *Smith* to argue that Defendants' delay in bringing the instant motion amounts to waiver. Like the defendant in *Smith*, Defendants have not expressly waived their right to arbitration, so "[t]he question is whether…considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Id*. The defendant in *Smith* was found to waive its right to arbitrate where it engaged in discovery, litigated discovery disputes, filed an answer that did not include its right to arbitrate, and engaged in motion practice, including a motion to dismiss, which the court ultimately denied. *Id*. at 500-01. Here, on the other hand, Defendants' answer cites the Arbitration Agreement as an affirmative defense, and

---

[5] Muhammad includes this letter in her original complaint but not in her Amended Complaint nor in her response to Defendants' motion.

although Defendants filed a previous motion to dismiss that did not include their Rule 12(b)(3) argument, the Court did not rule on the motion because of Muhammad's decision to amend her complaint. Further, Defendants sought and obtained a stay of discovery pending resolution of their motion to dismiss, so the parties have not yet engaged in any discovery. Thus, unlike the defendant in *Smith*, Defendants have acted consistently with a right to arbitrate. *Id.*; *see also Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt.*, 364 F.3d 884, 887-88 (7th Cir. 2004) (finding party did not waive improper venue defense even where party "preliminary pretrial litigation activity" and waited nine (9) months to move to transfer venue).[6]

Additionally, the Court notes that the Federal Rules of Civil Procedure specifically provide for waiver under certain circumstances. Although Muhammad does not explicitly cite the federal rules, the Court liberally construes her response to include this argument. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017); *see also Rappe v. Unknown Train Conductor*, No. 18-cv-6172, 2020 WL 1166179, at *5 (N.D. Ill. Mar. 11, 2020). Rule 12(h) provides that a defendant waives an improper venue defense by "(A) omitting from a motion in the circumstances described in Rule 12(g)(2); or (B) failing to either…include it in a responsive pleading…." Fed. R. Civ. P. 12(h)(1). Relatedly, Rule 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).

---

[6] Muhammad also cites a Texas state court decision in arguing Defendants have waived their right to arbitrate. *See Adcock v. Five Star Rentals/Sales, Inc.*, No. 04-17-00531-CV, 2018 WL 1831646, at *1-2 (Tex. App. Apr. 18, 2018). Muhammad argues her "grievance letter" acted to notify Defendants of her desire to arbitrate, and their failure to do so constitutes waiver. Even assuming the Court could properly consider the grievance letter, the letter does not request—nor even mention—arbitration. As such, *Adcock* is inapposite. *Id.* (finding defendants waived right to arbitrate where plaintiff's letter requested a copy of any applicable arbitration agreement and explicitly stated that failure to produce the agreement in 30 days would constitute waiver).

11

The Court finds these rules do not compel a finding of waiver here because, even though Defendants omitted their Rule 12(b)(3) argument from their initial motion to dismiss, they nevertheless included it as an affirmative response in their answer which was filed simultaneously, thereby complying with Rule 12(h). *See Taylor v. Samsung Elecs. Am., Inc.*, No. 19 C 4526, 2020 WL 1248655, at *7 (Mar. 16, 2020) (finding no waiver where defendant included arbitration agreement as affirmative defense); *see also Lieberman v. Budz*, No. 00 C 5662, 2013 WL 157200, at *9 (N.D. Ill. Jan. 15, 2013) (finding same). This finding accords with the underlying policy of the federal rules, which is "to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, ***loses***, then files a second motion on another ground." *Ennegna v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). Here, Defendants are still on their "first bite of the apple" because the Court never ruled on the initial motion to dismiss.

For the foregoing reasons, the Court finds Defendants have not waived their rights to arbitration. However, as explained above, there is a genuine dispute of fact as to whether an agreement to arbitrate exists at all. Because a valid arbitration agreement may exist, the Court declines at this time to address Defendants' Rule 12(b)(6) arguments, which reach the merits of Muhammad's claims. *See AT&T Techs., Inc.*, 475 U.S. at 649.

## CONCLUSION

Defendants' motion to compel arbitration or, in the alternative, to dismiss [53] is denied without prejudice. The Court sets this case for a status hearing on May 5, 2020 at 9:30 a.m. The Court also sets a trial date of June 1, 2020 at 9:30 a.m.

**SO ORDERED.**    **ENTERED: March 31, 2020**

.

_____
**HON. JORGE ALONSO**
**United States District Judge**